[No. 1283.]

ROESCH v. THE BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY.

PRACTICE—CROSS-EXAMINATION OF WITNESS.
In an action against a county to recover the value of services rendered in the publication of nominations for election, the only issue being as to whether the paper in which publication was made was a news-paper, it was reversible error to permit counsel for defendant to cross-examine plaintiff to an unwarrantable extent and on matters foreign to the issues. Such an examination tended to prejudice the plaintiff's case before the jury.

*Appeal from the District Court of Douglas County.*

Mr. J. WARNER MILLS and Mr. JO. A. FOWLER, for appellant.

Mr. W. H. DAVIS, for appellee.

BISSELL, J., delivered the opinion of the court.

This action was begun by the appellant against the county commissioners of Douglas county, to recover the value of services rendered in the publication of nominations for the election in November, 1894. The complaint set up that Roesch was the publisher of the Castle Rock Press. He averred that the clerk ordered him to publish the nominations in the county, and that in execution of the order this list of nominations was contained in the issues of that paper for the requisite number of times under the statute and from October 30, until November 5. He set up of course the amount of space which the list occupied, stated its value, the presentation of the bill, the board's disallowance, the appeal, and prayed judgment. The defense as pleaded only related to two matters; the first was that the Castle Rock Press was not a newspaper, and the other contested the value of the services rendered. There was an attempt to deny the remaining parts of the complaint in the statutory form but the denial lacked averments of knowledge or information. We are therefore concerned only with the questions whether it was a newspaper and whether the work done was of the value claimed.

The last question is of no significance because there was no evidence to the point of the value except the testimony of the plaintiff and he was a man of sufficient experience to be competent to testify, and he gave very direct evidence as to the character of work and made definite proof of performance as well as of the order of the clerk to publish the list.

The only defense then is presented by the denial that the Castle Rock Press was a newspaper. The jury probably concluded it was not a newspaper, and their verdict might possibly be upheld but for the fact that in the examination of the witness, counsel was permitted over the objections of the plaintiff, to cross-examine to an unwarrantable extent, and

on matters which were utterly foreign to the issues. This must have tended to prejudice the plaintiff in his suit. This is true whether he had or had not a claim. We are compelled to reverse it on this ground because the question of fact, whether the Castle Rock Press was a newspaper was one peculiarly for the jury to determine, and on which they had a right to pass under the instructions of the court as to the legal requisites of a paper. The court in its charge observed the law in that respect as we think with sufficient accuracy, stated the essential requisites of a newspaper in modern times and in this particular it is not open to question. The trouble was, this Castle Rock Press was one of numerous publications which sprang into existence in the fall of 1894 in the various counties of the state, and were put in operation for the simple purpose of publishing the constitutional amendments which had been passed by the legislature, and which were to be published under the direction of an officer of the state government. These papers gathered in so far as their influence, labors, or efforts could make it possible, political and other work in the various counties in which they located. This is quite apparent from the fact that the Castle Rock Press started on the 17th day of September and ceased its publication the day after election, and had in it very little of advertising or other valuable matter, aside from the constitutional amendments and the list of nominations. It contained, however, enough other matter to make it come in its general form and substance within the legal definition of a newspaper. It had reading matter, telegraphic despatches, and news from different parts of the state. So far as we can see it makes very little difference whether this matter was directly procured through a connection with the Association Press, or whether the whole thing was taken from other papers by the well known and speedy article of the printer's trade, the scissors. As issued, it had the form, appearance, and requisites of a newspaper. To establish sundry and divers things which were clearly illegal and must have prejudiced the plaintiff's cause, if he had any, counsel

for the appellee endeavored to show by the cross-examination of Roesch that part of the paper was printed in Denver. This was unimportant because at the present time everybody knows that patent insides and patent outsides are used by many so-called metropolitan papers in their various issues, and that these are furnished by other associations in regular form and distributed to newspapers about the country. The use of them does not deprive a paper of the legal elements of a newspaper, and is entirely legitimate. In the same way the county also attempted to show that before Roesch went to Castle Rock, he made a contract with an officer of the state government to publish these constitutional amendments, and that he would not have gone but for that reason. It also sought to prove his connection with O'Brien, editor of a democratic newspaper in Douglas county, and to argue and infer from that, that if he published his paper in the office and on the press, and by the use of the material of the democratic sheet, this fact would tend to prove that the Castle Rock Press, which supported the populist party, could not be a newspaper. This was entirely irregular and in no manner tended to establish any issue formed by the pleadings. Counsel also asked the plaintiff the name of the individual from whom the suggestion first came that he should publish the paper, and likewise whether he received contributions from the chairman of political committees, state, county, and central, in various counties. This was apparently true and the contributions were presumably made because it was believed that this paper might be useful in the election of the people whose interests were held in the highest esteem by these committees. This might have been well enough under some circumstances, and under different conditions, but it in no manner tended to throw any light on any issue in the case, and it must have been detrimental to the plaintiff. The county cross-examined as to the cash value of the subscription list of the Castle Rock Press. This in one view was right, but the examination took an incorrect form, and in that form ought not to have been permitted. It was undoubtedly

proper for the county to show, if they could, that the Castle Rock Press had no subscription list, and that it distributed no papers to persons who regularly took it as a newspaper, as this would tend to prove that it was not a newspaper at all, but many of the questions directed to this end were irregular in form and incorrect in theory, and counsel should have been compelled to modify them.

These general expressions will undoubtedly indicate the views of the court with reference to the errors which occurred on the trial, and point out the issues which remain for consideration, and on the rehearing it will not be difficult to avoid these errors. If the case shall then be correctly tried, and a like verdict is rendered we may be able to affirm it.

Being of the opinion that this case was not correctly tried, we must reverse the judgment, and send it back for further proceedings in conformity with this opinion.

*Reversed.*